Case 2:10-cv-04862-ODW-FMO Document 58 Filed 11/04/11 Page 1 of 11 Page ID #:3374

O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LEWIS KIM, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL GROUP, INC., a Massachusetts Corporation, and DOES 1 through 10, inclusive<br><br>　　　　　　Defendants. | CASE NO. CV 10-4862 ODW (FMOx)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Currently before the Court is Defendant, Liberty Mutual Group, Inc.'s ("Defendant"), Motion for Summary Judgment. (Dkt. No. 43.) After careful consideration, the Court deems the matter appropriate for decision without oral argument, and vacated the September 19, 2011 hearing. *See* Fed. R. Civ. P. 78 ("Rule ___"); L.R. 7-15. For the following reasons, the Court **GRANTS** Defendant's Motion.

1

## II. FACTUAL BACKGROUND

Defendant hired Plaintiff, Lewis Kim ("Plaintiff"), as a Sales Representative and as an at-will employee for its El Monte Office on May 24, 2006. (Def.'s Statement of Uncontroverted Facts ("SUF"), Dkt. No. 43-2, Nos. 1-3, 5-7.) During his employment, Plaintiff alleges to have applied for two managerial positions in San Diego and Ontario, California on October 2007 and January 2008 respectively. (Compl. ¶¶ 9-10.) While Defendant claims to not have any record of Plaintiff's application for the San Diego position, the internal job posting for these positions stated: "Qualified candidates will possess sales experience, supervisory experience, and same or related industry experience. Previous sales and sales management experience is required." (SUF No. 23.) Further, because a successful candidate would be required to "[d]evelop and improve the performance of the sales management team to achieve established goals," the internal job posting for this position required "proven success with prior sales or related experience . . ." in property, casualty and life insurance products. (SUF No. 24.) According to Plaintiff, both positions were offered to "less experienced and less qualified non-minority Liberty Mutual employee[s]." (Compl. ¶ 9.)

Plaintiff, however, lacked experience managing employees at an insurance company. (SUF Nos. 25-28.) In addition, Plaintiff never was a trainer, never sought out a role in public relations, never developed production standards, and failed to meet his sales targets. (*Id.*) For example, Plaintiff was required to sell thirteen insurance policies in 2007 but sold zero during that year. (SUF Nos. 29-30.) Consequently, Plaintiff was not offered these positions in San Diego and Ontario, and Defendant announced the promotion of successful candidates on November 19, 2007 and March 6, 2008. (SUF Nos. 51-52.)

Defendant maintains written policies prohibiting discrimination on the basis of protected categories recognized by federal and state law, including race and national origin. (SUF No. 12.) The employee handbook also requires employees to promptly report any discrimination to his or her immediate supervisor, manager or a human

resources representative. (SUF No. 13.) Likewise, Defendant allowed employees to report complaints by way of its "Liberty Listens" program, which provides a formal procedure through which an employee could communicate directly with the Employee Relations department located at Liberty's home office in Boston. (SUF No. 16.) Plaintiff did not take advantage and complain of the alleged discrimination through these established reporting mechanisms. (SUF Nos. 17-21.)

Plaintiff alleges that shortly after he filed charges against Defendant with the DFEH, Defendant audited Plaintiff's book of business. (*See* Compl. ¶ 11.) Notwithstanding Plaintiff's allegations, it was found that Plaintiff cancelled and rewrote policies making it appear he had generated new business. (SUF No. 45.) Particularly, Plaintiff cancelled existing accounts, changed the names of the policyholders, and opened new accounts with the same policyholders. (*Id.*) Despite Plaintiff's contention that his primary goal was to cross-sell and retain the customer, he admitted that he received new business credit for these accounts, which caused him to receive related commission payments. (SUF No. 49.) Consequently, Plaintiff was terminated on April 15, 2008. (Compl. ¶ 12.) Plaintiff subsequently filed charges with the California Department of Fair Employment and Housing ("DFEH") on April 6, 2009, and received his "right to sue" notice. (SUF No. 55; Compl. ¶ 6.)

Based on the foregoing, on April 2, 2010, Plaintiff instituted this action in state court.[1] (Dkt. No. 1, Exh. A.) Defendant removed the case to this Court on June 30, 2010. (Dkt. No. 1.) The Court set deadlines for fact discovery cut-off of September 2, 2011 and last date to hear motions of October 17, 2011 (modified subsequently to October 24, 2011). (Dkt. Nos. 17, 42.) Defendant filed its Motion for Summary Judgment on

---

[1] Plaintiff alleges the following claims: (1) Discrimination Based on Race and National Origin Discrimination in Violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, *et seq.*; (2) Failure to Promote in Violation of the FEHA; (3) Retaliation in Violation of the FEHA; (4) Wrongful Termination in Violation of Public Policy; (5) Breach of Contract; and (6) Failure to Pay Wages, Cal. Labor Code § 200, *et seq.*

3

September 23, 2011.[2] (Dkt. No. 43.) Rather than filing Opposition papers, Plaintiff filed a Declaration pursuant to Rule 56(d) in lieu of an Opposition to Defendant's Motion on October 3, 2011. (Dkt. No. 47, ["Rule 56(d) Decl."].) On October 18, 2011, Plaintiff filed a Request for Leave to File Supplemental Briefing and Additional Declarations in Support of Plaintiff's Rule 56(d) Motion.[3] (Dkt. No. 56.)

### III. PLAINTIFF'S RULE 56(d) MOTION

Plaintiff proposes that the Court deny Defendant's Motion and allow the case to proceed to trial. Specifically, Plaintiff claims that there are several potential witnesses who will corroborate Plaintiff's contentions that Defendant maintains "a pattern and practice of discriminating against minorities, especially Asians, in failing to promote such minority employees . . . ." (Rule 56(d) Decl. at 1-2.) While these witnesses have been unwilling to attest to this contention for fear of retaliation, Plaintiff believes that their testimony will prove his case if subpoenaed during trial. (*Id.*) Defendant contends that Rule 56(d) cannot apply in this instance. (Reply at 3-4.) Even if the Rule applied, Defendant argues and the Court agrees that this case does not warrant postponement, much less denial, of Defendant's Motion. (Reply at 4.)

As an initial matter, the Court questions the propriety of Plaintiff's Rule 56(d) Motion in this instance. Generally, Rule 56(d) applies in cases where parties argue that the motion for summary judgment is premature because more time and further discovery are necessary to effectively file an Opposition. *See, e.g.*, *Thommeny v. Paramount Pictures Corp., et al.*, CV10-6951 VBF (FMOx), 2011 WL 2899340, at *2 (C.D. Cal. July 13, 2011) (finding that no good cause shown to either continue the motion for summary judgment, nor reopen discovery because the nearly one year of discovery was found sufficient). Plaintiff, here, does not seek further discovery, but rather, moves for

---

[2] While Plaintiff argues that Defendant's Motion is untimely, there is no question that the last motion hearing date was set as October 24, 2011 and the Motion was filed on September 23, 2011. Hence, the Motion was timely. *See* L.R. 6-1. With respect to Plaintiff's argument that the Motion was filed without compliance with Local Rule 7-3, the Court finds that the parties failed to take advantage of opportunities afforded to meet and confer for reasons that are beyond the understanding of this Court. (*See* Order Striking Def.'s Mot. for Summ. J. for Failure to Comply with L.R. 7-3, Dkt. No. 40.)

[3] To the extent Plaintiff's Supplemental Brief is considered in this Order, the Request for Leave to File a Supplemental Brief is GRANTED.

a wholesale denial of Defendant's Motion because certain facts and testimony possibly will be presented during trial. Plaintiff, however, turns a blind eye to the purpose behind Rule 56(a) where the Court must grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact." Accordingly, a trial may not be necessary and judicial resources conserved if no issues of disputed facts exist.

Nevertheless, if Rule 56(d) applies in this case, the party opposing summary judgment must show: (1) Facts indicating a likelihood that controverting evidence exists as to material fact; (2) Specific reasons why such evidence was not discovered or obtained earlier in the proceeding (*i.e.*, good cause); (3) Steps or procedures by which the opposing party proposes to obtain such evidence within a reasonable time; and (4) An explanation of how those facts will suffice to defeat the pending summary judgment motion. *See Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1101 (9th Cir. 2006). Here, Plaintiff fails to show that denial of Defendant's Motion is required under Rule 56(d). *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) ("The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists."). Here, Plaintiff merely argues that he is informed and believes based on his observations that there are former colleagues that will attest to Defendant's alleged pattern of discrimination against minorities. (*See* Rule 56(d), Decl. ¶ 2.) The Court, without more, cannot ascertain what any potential testimony will entail and how that testimony will likely controvert Defendant's contentions. *See Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998) (quoting *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir.1987)) (In seeking such relief, "a party opposing summary judgment 'must make clear what information is sought and how it would preclude summary judgment.'"). In addition, Plaintiff would like this Court to believe that potential witnesses, who have been unwilling to provide testimony or even declarations during the course of litigation, will have a sudden change of heart and testify during trial. Although this Court may subpoena non-party

witnesses to testify, its powers are not unlimited. *See generally* Fed. R. Civ. P. 45. Such hypothetical evidence and testimony cannot form the basis of a Rule 56(d) Motion. *See Margolis,* 140 F.3d at 853-54 (affirming the district court's correct denial of motion for continuance [ ] where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described, and his assertions appeared based on nothing more than "wild speculation").

Likewise, Plaintiff's argument that the "unidentified witnesses are either too afraid or constrained by agreements" as reasons why such evidence was not obtained is unavailing. (Decl. of Karen Moskowitz Pursuant to Rule 56(d) ["Moskowitz Rule 56(d) Decl."] ¶ 7.) Even if specific testimony is not ascertainable, Plaintiff had the opportunity to conduct discovery for well over one year. (*See* Scheduling Order, Dkt. No. 17.) The fact that Plaintiff was incapable of finding any evidence directed to any material fact during the course of discovery, perhaps, shows that the case lacks merit at best. At worst, there is an indicia of neglect on the part of Plaintiff and Plaintiff's counsel that, by itself, can be fatal to Plaintiff's Rule 56(d) Motion. *See Emp'rs Teamsters Local Nos.175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1130 (9th Cir. 2004) (finding that where a party has failed to diligently pursue discovery, it is proper to deny a request under Rule 56(d)). Furthermore, Plaintiff fails to provide steps or procedures by which he proposes to obtain such evidence within a reasonable time nor does he sufficiently explain how those facts will suffice to defeat the pending summary judgment motion. Accordingly, the Court **DENIES** Plaintiff's Rule 56(d) Motion.

## IV.   DEFENDANT'S SUMMARY JUDGMENT MOTION[4]

Defendant moves for summary judgment as to all of Plaintiff's claims. The party making a motion for summary judgment bears the initial burden of identifying pleadings, depositions, answers to interrogatories, admissions on file, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial

---

[4] To the extent considered in this Order, Defendant's Request for Judicial Notice is GRANTED. (Dkt. No. 43, Exh. 13.)

on a dispositive issue, summary judgment should be entered against that party, after adequate time for discovery, if that party fails to sufficiently show the existence of an essential element of a claim. *Id*. If unopposed, the court may order summary judgment only if the undisputed facts and other supporting materials show that the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(e)(3). In determining a motion for summary judgment, the court may assume that any unopposed material facts claimed and adequately supported by the moving party are admitted to exist. *See* Fed. R. Civ. P. 56; L.R. 56-3.

### A. PLAINTIFF'S FIRST AND SECOND CLAIMS PURSUANT TO THE FEHA

Defendant is entitled to judgment as a matter of law as to Plaintiff's discrimination claims pursuant to the FEHA. California courts apply Title VII's[5] burden shifting analysis in analyzing state discrimination claims under the FEHA. *See Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 (2000)). The Ninth Circuit has found that:

> [a] plaintiff alleging disparate treatment [ ] must first establish a prima facie case of discrimination by offering evidence that give[s] rise to an inference of unlawful discrimination. A plaintiff may establish a prima facie case either by meeting the four-part test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or by providing direct evidence suggesting that the employment decision was based on an impermissible criterion.

*EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citations and internal quotations omitted). To establish a prima facie case under the four-part test, a plaintiff must demonstrate: "that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

After a plaintiff establishes a prima facie case:

---

[5] Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*.

> [t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. If the employer does so, the plaintiff must then show that the articulated reason is pretextual either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. When the evidence is direct, we require very little evidence to survive summary judgment in a discrimination case. But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the employer's motion for summary judgment.

*EEOC*, 577 F.3d at 1049 (citations and internal quotations omitted).

In this case, the Court finds that Defendant's employment decision not to promote Plaintiff was lawful because the facts show that Plaintiff was not qualified for the Sales Manager positions at the San Diego and Ontario offices. (Mot. at 14.) Specifically, it is uncontroverted that Defendant required candidates to have prior supervisory experience. (SUF No. 56.) Plaintiff admitted to not having relevant supervisory experience in the insurance industry. (SUF No. 57.) In addition, while the positions required proven success with prior sales or related experience, it is undisputed that Plaintiff's sale performance was not at acceptable levels at the time of his applications. (SUF No. 58.) Successful candidates who were offered these positions, on the other hand, had strong sales performances and had either supervisory or training experience in the insurance industry. (SUF. No. 59.) The uncontroverted facts ultimately show that Plaintiff lacked managerial experience and did not have a proven record of success with prior sales.

In addition, it is undisputed that Plaintiff cancelled and rewrote policies making it appear he had generated new business. (SUF No. 45.) Plaintiff's receipt of compensation based on these inflated sales was, as Plaintiff admits, a violation of company policy. (*See* SUF No. 49.) As a result, even assuming that Plaintiff established a prima facie case of discrimination, which he does not, Defendant articulates legitimate,

nondiscriminatory reasons for its decision to not promote and terminate Plaintiff, and the Court finds Defendant's contentions "worthy of credence." *See EEOC*, 577 F.3d at 1049. Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's First and Second claims.[6]

### B. PLAINTIFF'S THIRD CLAIM FOR RETALIATION PURSUANT TO THE FEHA

Plaintiff's claim for retaliation cannot survive Defendant's Motion. In evaluating retaliation claims pursuant to the FEHA, courts consider the *McDonnell Douglas* burden shifting analysis requiring a plaintiff to first set forth a prima facie case of retaliation. *See Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n. 4 (9th Cir. 1989); *see also Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 475-76 (Ct. App. 1992). A plaintiff must demonstrate that: "(1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1064 (9th Cir. 2002). If a prima facie case is established:

> [t]he burden of production then shifts to the defendant-employer to articulate a legitimate, non-retaliatory explanation for the adverse employment action. If the employer successfully rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's proffered explanation is merely a pretext for impermissible retaliation.

*Miller*, 885 F.2d at 504 n. 4 (citations omitted).

---

[6] Defendant also contends that Plaintiff's "failure to promote" claims pursuant to the FEHA is barred because his DFEH complaint was untimely. (Mot. at 12.) "In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1121 (Ct. App. 1989). Exhaustion in this context requires filing a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue. *Romano v. Rockwell Int'l, Inc*., 14 Cal.4th 479, 492 (1996). Here, Plaintiff alleges that the conduct occurred "on about or before 4/15/2008." (Pl.'s DFEH Compl., Dkt. No. 13, Exh. 13.) On the contrary, Defendant argues that Plaintiff was notified of relevant employment decisions on November 19, 2007 and March 6, 2008 respectively. (Mot. at 13.) Accordingly, the Court finds that there are disputed issues of fact as to when Plaintiff became aware of the alleged unlawful conduct and whether the DFEH complaint was filed within one year of that date. Thus, while Defendant's Motion is granted on other grounds, Defendant is not entitled to judgment as a matter of law on this basis.

Here, it is undisputed that Plaintiff never advised Defendant's Human Resources Department or utilized any of its reporting mechanisms that he was refused the promotions based on race and/or national origin. (SUF Nos. 17-18, 61-62.) In addition, Plaintiff admitted that he never expressly informed any management member that he believed he was being discriminated against in any fashion. (SUF Nos. 17, 63.) As a result, there is no causal link between the alleged adverse employment decision and the alleged protected activity because Defendant had no knowledge of Plaintiff's protected activity at the time of his termination. Even assuming that Plaintiff established a prima facie case of retaliation, as the Court articulates above, a legitimate, non-retaliatory reason for its decision to terminate Plaintiff exists. As a result, there is no evidence indicating that Defendant's proffered explanation is merely a pretext for impermissible retaliation. Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's Third Claim.

### C. REMAINING CLAIMS

Plaintiff's Fourth Claim for wrongful termination in violation of public policy fails. "In order to sustain a claim of wrongful discharge in violation of fundamental public policy, [a plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994). As addressed above, there are no questions of fact as to whether Plaintiff was wrongfully terminated or retaliated against on the basis of race or national origin. Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's Fourth Claim.

In addition, Plaintiff filed an *ex parte* application seeking an order striking Plaintiff's Fifth Claim for breach of contract and Sixth Claim for failure to pay wages. (Dkt. No. 54.) In his papers, Plaintiff makes it clear that these claims will not be filed ever again. (Dkt. No. 54 at 4 ["And if these claims are instead stricken now pursuant to amendment, Liberty cannot be harmed inasmuch as Plaintiff proposes that the Order

granting his request for striking these claims also prohibit him from ever re-filing them."].) Accordingly and in light of the uncontroverted facts[7] set forth in Defendant's papers, Plaintiff's Fifth and Sixth Claims are **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. All claims are **DISMISSED WITH PREJUDICE**. The Clerk of Court shall close this case.

IT IS SO ORDERED.

November 4, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

---

[7] With respect to the breach of contract claim, Plaintiff admitted that he was an at-will employee. (SUF No. 2.) Hence, his breach of contract for termination without cause must fail because an "at-will employment may be ended by either party 'at any time without cause.'" Cal. Labor Code § 2922. With respect to Plaintiff's sixth claim, Defendant has shown that Plaintiff expressly waived, *inter alia*, all statutory and common law claims against Defendant for failure to pay wages and related penalties. (SUF Nos. 75-80.) Accordingly and notwithstanding Plaintiff's application, Defendant's Motion must be granted as to these claims.